IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GEORGE H. CHAVEZ,

        Plaintiff,

v.                                                                                      Civ. No. 04-0571 JCH/RHS

PATRICK G. BACA, P.R.C. Chief of Staff,
ERIC SERNA, N.M. Superintendent of Insurance,
and JOE RUIZ, N.M. Deputy Superintendent of
Insurance, in their individual capacities, ROBERT
CASWELL INVESTIGATIONS, INC., a New
Mexico Business Corporation,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Robert Caswell Investigations, Inc.'s ("RCI") Motion for Partial Summary Judgment on Count III, filed September 28, 2004 [Doc. No. 23], Defendant RCI's Motion for Partial Summary Judgment on Count IV, Prima Facie Tort, filed September 28, 2004 [Doc. No. 25], Defendant RCI's Motion for Partial Summary Judgment on Plaintiff's Proximate Cause Claim, filed June 15, 2005 [Doc. No. 93], and Defendant RCI's Motion for Partial Summary Judgment on Punitive Damages Claim, filed September 28, 2004 [Doc. No. 21]. The Court having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the Motion for Partial Summary Judgment on Count III and the Motion for Partial Summary Judgment on Count IV, Prima Facie Tort are well taken and will be granted. Because the Court grants Defendant RCI's Motion for Partial Summary Judgment on Count III and dismisses the negligence and fraudulent misrepresentation claims pursuant to this motion, the Court denies as moot the Motion for Partial

Summary Judgment on Plaintiff's Proximate Cause Claim and the Motion for Partial Summary Judgment on Punitive Damages Claim.

## BACKGROUND

In 1995, Plaintiff George Chavez was appointed New Mexico State Fire Marshal. As a classified employee of the State of New Mexico, the State could terminate Plaintiff from his position only for "just cause" after the institution of "progressive discipline."

Defendant RCI is a licensed, bonded, insured investigation company. Defendant RCI entered into a contract with the State of New Mexico's Risk Management Division to provide "claims and investigating services" related to Plaintiff for the State. Specifically, on December 11, 2002, pursuant to the contract, Defendant Patrick Baca, Public Regulation Commission (PRC) Chief of Staff, retained RCI and Leroy Lucero Jr., an employee of RCI, to investigate "George Chavez in an effort to identify acts that violate established division policy particularly [SIC] acts of insubordination, abuse of authority, and general mismanagement practices."

Prior to entering into its contract with the State of New Mexico, Defendant RCI submitted a proposal to provide services to the State, in which Defendant RCI identified state agency general counsel who had "used RCI in numerous internal employment claims to minimize exposure to the agency and the state in employment claims." RCI's proposal also indicated that the "State Personnel Board had upheld every appeal of a disciplinary action taken in a case we investigated." The proposal further named Defendants Baca and Eric Serna, and defense counsel to the PRC defendants Paula Maynes and attached letters of reference from attorneys handling claims against the State and the City of Albuquerque. These letters of recommendation contained statements such as "they give me what I want, when I want it, and they keep me informed."

Defendant RCI points to evidence indicating that one of its shareholders Robert Casey has at times told state and city agencies that there are no facts to support an action against an employee.

Mr. Lucero's report regarding his investigation of Plaintiff is dated January 21, 2003. The parties dispute whether Defendant RCI and Mr. Lucero's investigation of Plaintiff, upon which the report is based, was fair and unbiased. Plaintiff provides examples of evidence supporting his claim that Defendant RCI's investigation was not fair and unbiased. Such examples include but are not limited to evidence from which a reasonable jury could conclude that Defendant RCI failed to, among other things, (1) investigate allegations that the PRC Defendants were targeting Plaintiff for termination, including interviewing key witnesses, (2) transcribe and summarize witness interviews in an accurate and neutral manner, (3) prepare an accurate "evaluation" section of the report, (4) use neutral investigators, (5) properly obtain Plaintiff's side of the story, and (6) provide complete details about Plaintiff's connection with a settlement agreement. Defendant RCI disputes Plaintiff's claim that the investigation was unfair and biased, and provides evidence from which a reasonable jury could find that the report and investigation were fair and unbiased.[1]

The State of New Mexico terminated Plaintiff on March 21, 2003. The parties dispute whether Defendant RCI participated in the State's decision to terminate Plaintiff. Although the parties agree that Defendant Baca made the final decision to terminate Plaintiff, Plaintiff maintains that Defendant Baca relied upon the facts as represented in Defendant RCI's investigative report.

On April 8, 2004, Plaintiff filed a complaint in New Mexico state court against Defendant RCI seeking compensatory and punitive damages for negligent misrepresentation, fraudulent

---

[1] In their briefs, the parties set forth numerous facts regarding Defendant RCI's investigation and report. The Court does not describe all of these facts herein, however, because they are not relevant to its decision of the motions for summary judgment.

3

misrepresentation, negligence, and prima facie tort.  Defendants thereafter removed the complaint to this Court, and on September 28, 2004, Defendant RCI filed three motions for summary judgment seeking dismissal of Plaintiff's claims.  On June 15, 2005, Defendant RCI filed an additional motion for summary judgment seeking dismissal of Plaintiff's negligence claim on the ground of failure to demonstrate proximate cause.

## STANDARD

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'"  *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted).  Under Rule 56(c) of the Federal Rules of Civil Procedure, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim.  *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998).  "'Instead, the movant only bears the initial burden of 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324

(quoting Fed. R. Civ. P. 56(e)).  If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law.  *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

## DISCUSSION

I.  <u>Motion to Dismiss Count III: Negligent Misrepresentation, Fraudulent Misrepresentation and Negligence</u>

    A.    Negligent Misrepresentation

Defendant RCI argues first that the Court should grant summary judgment in its favor on Plaintiff's negligent misrepresentation claim because Plaintiff cannot establish as a matter of law that Defendant RCI had a duty to Plaintiff, that Defendant RCI misrepresented a fact to Plaintiff, that Plaintiff relied upon a misrepresentation of fact, and that Defendant RCI intended to induce plaintiff to rely upon a misrepresentation of fact.[2]  The Court will consider each of these arguments in turn.

        1.    Duty

Defendant RCI contends that it did not owe Plaintiff a duty of care in preparing its report or conducting its investigation.  According to Defendant RCI, the only duty of care it owed was

---

[2] To establish a prima facie case of negligent misrepresentation, Plaintiff must establish that Defendant RCI had a duty to Plaintiff, that Defendant RCI misrepresented a fact to Plaintiff, that Plaintiff relied upon a misrepresentation of fact, that Defendant RCI knew the representation was false at the time it made the representation or that it made the representation recklessly, and that Defendant RCI intended to induce Plaintiff to rely upon a misrepresentation of fact.  *Cf. Sailor v. Vales*, 63 P.3d 1152, 1158 (N.M. Ct. App. 2002); *see also* Restatement (Second) of Torts (a plaintiff must establish that the defendant supplied false information for the guidance of a plaintiff, that the plaintiff justifiably relied upon the false information supplied, that the defendant failed to exercise reasonable care in obtaining or communicating the information, that the defendant intended to supply the information or knew that the recipient of the information intended to supply it, and that the defendant intended, or knew that the recipient intended, that the information influence the plaintiff).

5

to its client the PRC.  In support of its claim, Defendant RCI cites the New Mexico Private Investigators and Polygraphers Act, N.M.S.A. § 61-27A-1 *et seq.*, which provides that a private investigator shall not (A) "divulge to any other person . . . any information acquired by him [or her] except at the direction of his [or her] employer or the client for whom the information was obtained," or (B) "knowingly make any false report to his [or her] employer or the client for whom the information was being obtained."  N.M.S.A. § 61-27A-12(A) and (B).  The Act also provides that "(C) No written report shall be submitted to a client except by the licensee, the manager or a person authorized by either of them, and the person submitting the report shall exercise diligence in ascertaining whether the facts and information of the report are true and correct."  *Id.* § 61-27A-12(C).  Defendant RCI claims that the Act creates only a duty on behalf of the investigator to the persons for whom the information was collected, *i.e.*, the employer and the client.  Defendant RCI maintains that it had a contract with the State of New Mexico and not with Plaintiff and that the contract provided that Plaintiff would be the target, and not the beneficiary, of the investigation.  Defendant RCI therefore argues that it did not owe Plaintiff a duty.  Plaintiff, in contrast, cites paragraph (C) of the Act, *id.* § 61-27A-12(C), and specifically, the language "exercise diligence in ascertaining whether the facts and information of the report are true and correct," in support of his conclusion that Defendant RCI owed a duty to Plaintiff (and other third parties) not to misrepresent facts and information in its investigation and report.

The excerpt cited by Plaintiff from Subsection (C) must be read in conjunction with the entirety of Subsection (C).  *Id.* § 61027A-12(C) ("No written report shall be submitted to a client except by the licensee, the manager or a person authorized by either of them, and the person submitting the report shall exercise diligence in ascertaining whether the facts and information of

6

the report are true and correct."). Although admittedly more ambiguous than Subsections (A) and (B), which specifically limit the duty of an investigator to his or her client and employer, Section (C) also contains similar limiting language. *Id.* ("[n]o written report shall be submitted to a *client*") (emphasis added). The relevant subsections of the statute--namely subsections (A), (B), and (C)--appear to be designed to protect persons who hire private investigators. Subsection (B), for example, establishes a duty on behalf of investigators not to knowingly provide false information to client, whereas Subsection (C) appears to establish a duty on behalf of investigators not to negligently provide false information to a client. *Compare, e.g.*, *id.* § 61-27A-12(E) (setting forth a general duty on behalf of an investigator to the public to not "use a title or wear a uniform, use an insignia, use an identification card or make any statement with the intent to give an impression that [the investigator] is connected in any way with the federal or state government or any political subdivision"). Because the relevant sections of the statute appear to be designed to protect the clients who hire investigators and not third parties, the Court holds that Defendant RCI does not owe Plaintiff a statutory duty of care.

The Court likewise holds that Defendant RCI does not owe Plaintiff a common law duty of care. In *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, an analogous case discussing the duty of care of attorneys to non-clients, the Supreme Court of New Mexico held that the "duty of care toward non-clients has been found to exist *only* in those situations where the non-client was an intended beneficiary of the attorney's services, or where it was reasonably foreseeable that negligent service or advice to or on behalf of the client could cause harm to others." 106 N.M. 757, 761, 750 P.2d 118, 122 (N.M. 1988). In *Rodey*, a non-client, adverse party in the underlying lawsuit of one of the firm's clients brought suit against the law firm

7

alleging that the firm engaged in negligent misrepresentation.  The New Mexico Supreme Court held that the law firm had no duty to the adverse, non-client party for "the obvious reason that the adverse party is not the intended beneficiary of the attorney's services and that the attorney's undivided loyalty belongs to the client." 106 N.M. at 761, 750 P.2d at 122.  The court explained, "An adverse party cannot justifiably rely on the opposing lawyer to protect him from harm.  Negligence contemplates a legal duty owing from one party to another, and the violation of that duty by the person owing it.  In the present context, this duty is owed by the lawyer to his client and to the legal system." *Id.*, 750 P.2d at 122.  The court further held that "[a]s a matter of public policy in order to maintain and enforce the fidelity and duty of the attorney toward the client, [the court] cannot jeopardize the integrity of the adversarial system by imposing a professional duty on an attorney toward an adverse party." *Id.*, 750 P.2d at 122.

In *Vigil v. State Auditor's Office*, the New Mexico Court of Appeals held that an accounting firm conducing an audit of a third-party, non-client had no duty towards that non-client.  116 P.3d 854 (N.M. Ct. App. 2005), *cert. denied*, 117 P.3d 952 (N.M. 2005).  In *Vigil*, a former auditor of a state agency sued the accounting firm hired by the current auditor of the agency to determine whether the former auditor acted improperly while in office. *Id.* at 856.  The court of appeals held that the trial court properly dismissed the former auditor's negligence claim against the accounting firm because the accounting firm owed no duty to the former auditor. *Id.* at 861.  The court considered whether the third-party plaintiff could establish the existence of a duty by demonstrating that he was the intended beneficiary of the information or by demonstrating that his reliance upon the information was foreseeable but held that the plaintiff could satisfy neither test. *Id.*  The court explained that the former auditor could not show that he, as the target

8

of the government audit, was an intended beneficiary of the audit. *Id.* The court also reasoned that the former auditor could not demonstrate that he relied upon the accuracy of the audit and that his reliance was foreseeable under a theory of direct negligence because he could not establish that he took actions in justifiable reliance on the information. *Id.* at 860, 861.

On the facts presented here, and based upon the holdings in *Rodey* and *Vigil*, the Court concludes that New Mexico does not recognize a common law duty on the part of an investigator to a third-party, non-client. Both *Rodey* and *Vigil* stand for the proposition that a third-party can demonstrate the existence of a duty by showing that he or she is an intended beneficiary of the defendant-client relationship. Alternatively, under *Rodey*, modified by *Vigil's* reliance requirement, a third-party, non-client also can demonstrate the existence of a duty by showing (1) that it was reasonably foreseeable that negligent service or advice to or on behalf of the client could cause harm to others,[3] (2) that the third party relied upon the accuracy of the audit (in that he or she took certain actions in justifiable reliance based upon the report), and (3) that the third-party's reliance was foreseeable under a theory of direct negligence. Here, because Plaintiff was the target of the investigation, he cannot argue convincingly that he was an intended beneficiary of the investigation or the report. *Cf. Vigil*, 116 P.3d at 860 ("as the target of a government audit," the court is 'not persuaded that [Vigil] was an intended beneficiary of the audit"); *Rodey*, 106

---

[3] Although *Rodey* stands for the proposition that a non-client can establish a lawyer's duty by demonstrating (1) that he or she was an intended beneficiary of the relationship or (2) that it was reasonably foreseeable that negligent service or advice to or on behalf of the client could cause harm to others, Plaintiff cannot avail himself of this latter test. In *Rodey*, the non-client plaintiff had in fact relied upon the attorney's alleged misrepresentation, and therefore the *Rodey* court did not need to address the question of reliance. In contrast, in *Vigil*, the former auditor had not relied upon the accounting firm's audit. The *Vigil* court therefore was forced to address the issue of reliance and held that reliance was mandatory. Under *Vigil* it is clear that a third-party, non-client must satisfy a reliance requirement.

9

N.M. at 761, 750 P.2d at 122 (an "adverse party is not the intended beneficiary of the attorney's services"). Plaintiff likewise cannot establish that he relied upon the accuracy of the investigation in that he took certain actions in justifiable reliance upon the report that resulted in damages.[4] *Vigil*, 116 P.3d at 861 ("[W]e are not persuaded that [plaintiff] has demonstrated that he relied on the accuracy of the audit. He did not allege in his complaint or argue on appeal what action he took in justifiable reliance on the report that resulted in any damages."). Accordingly, based upon these cases, the Court holds that Defendant RCI did not owe Plaintiff a common law duty of care.[5]

Plaintiff's arguments to the contrary do not persuade the Court otherwise. Plaintiff argues first that New Mexico courts have established a general duty of ordinary care towards others provided harm is foreseeable. *See, e.g.*, *Hermosillo v. Leadingham*, 129 N.M. 721, 725, 13 P.3d 79, 83 (N.M. Ct. App. 2000) ("'[a]ssuming other policy considerations are satisfied, a duty to exercise ordinary care, where it otherwise would not exist, may arise when a person voluntarily undertakes a course of conduct which, in the absence of due care, may foreseeably injure others as a natural and probable consequence of the person's conduct'") (quoting *Davis*, 127 N.M. at

---

[4] Plaintiff also cannot demonstrate, by virtue of physical injury, that he need not satisfy the reliance requirement. *Cf. Davis v. Bd. of County Comm'rs*, 127 N.M. 785, 793, 987 P.2d 1172, 1180 (N.M. Ct. App. 1999).

[5] Plaintiff cites a lower New York court decision, *Zampatori v. U.P.S.*, 479 N.Y.S. 2d 470 (N.Y. Sup. Ct. 1984), in support of his claim that an investigator owes a duty to a non-client. Although this case is factually analogous to the case at bar, the Court notes that *Rodey* and *Vigil* are binding upon this Court whereas *Zampatori*, a New York decision, is not. Furthermore, as Defendant RCI points out, the highest court in New York subsequently held that a person who was made the subject of a polygraph lie detector test may not maintain an action against the examiner based upon the alleged negligent administration of the test. *Hall v. U.P.S.*, 76 N.Y. 2d 27, 555 N.E.2d 273 (N.Y. 1990).

791, 987 P.2d at 1178) (additional citation omitted).  The general proposition set forth in the cases cited by Plaintiff, which requires the Court to determine foreseeability in the abstract, does not persuade the Court to ignore *Rodey* and *Vigil*, which are factually analogous and specifically applicable to this case.[6]

Likewise, Plaintiff's citation to *Kestenbaum v. Penzoil Co.*, does not persuade the Court that Defendant RCI owed Plaintiff a duty of care.  108 N.M. 20, 28, 766 P.2d 280, 288 (N.M. 1988).  Although in *Kestenbaum*, the New Mexico Supreme Court held that an investigation conducted by an investigator on behalf of an employer was not sufficient alone to support the employer's dismissal of the employee, the plaintiff-employee in *Kestenbaum* did not sue the investigator but rather his employer.  *Id.*, 766 P.2d at 288.  The court held only that the employer did not act upon reasonable grounds when it terminated the plaintiff and did not address what duty, if any, an investigator owes to a non-client target of an investigation.  *Id.*, 766 P.2d at 288.  The case therefore does not alter the binding effect of *Rodey* and *Vigil*.

Finally, the Court is not persuaded by Plaintiff's arguments that Defendant RCI owed him a duty of care because Defendant RCI conceded the existence of that duty, *see* Opp. Br. at 14 ("RCI's claim that it conducted a fair and unbiased investigation can only lead to the conclusion that it has voluntarily acknowledged a duty of ordinary care to entities other than the PRC

---

[6] Plaintiff's citations to *Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 905 P.2d 185 (N.M. 1995), *Davis*, 127 N.M. 785, 987 P.2d 1172; *Herrera v. Quality Pontiac*, 134 N.M. 43, 73 P.3d 181 (N.M. 2003), and *Williams v. Steward*, 137 N.M. 420, 112 P.3d 281 (N.M. Ct. App. 2005), likewise do not persuade the Court to find the existence of a duty on the part of Defendant RCI towards Plaintiff.  In addition to being distinguishable based upon factual dissimilarities (whereas *Rodey* and *Vigil* are factually analogous), these cases also are distinguishable on the ground that the plaintiffs in these cases relied upon, *i.e.*, took actions in justifiable reliance upon, the alleged negligence and were injured as a result of that alleged reliance.

commissioners and Baca"), or because public policy requires the Court to find the existence of a duty when private investigators are hired by the State and paid for by taxpayer dollars, *see id.* at 13. With respect to the first argument, for which Defendant cites no supporting authority, the Court holds that Defendant RCI's claim that it conducted a fair and unbiased investigation of Plaintiff cannot expand the duty it owes in conducting an investigation beyond that imposed by law. With respect to the second argument, for which Plaintiff also fails to cite authority, the Court likewise declines to find that this policy argument overrides the holdings of *Rodey* and *Vigil*.

Because Plaintiff cannot establish the existence of a duty on behalf of Defendant RCI towards Plaintiff, Plaintiff cannot, as a matter of law, set forth evidence sufficient to establish the elements of a negligent misrepresentation claim. Accordingly, the Court grants Defendant RCI's motion for summary judgment on the negligent misrepresentation claim

2.  Remaining Elements

Defendant RCI also is entitled to summary judgment in its favor because Plaintiff cannot establish as a matter of law the remaining elements of a negligent misrepresentation claim. First, Plaintiff cannot demonstrate that Defendant RCI made a misrepresentation of Fact to Plaintiff. Defendant RCI's report was prepared for the PRC, and not for Plaintiff. Accordingly, assuming that Defendant RCI did indeed misrepresent facts, the facts were misrepresented to the PRC and not Plaintiff. Second, Plaintiff cannot demonstrate that Plaintiff relied upon Defendant RCI's report. The complaint does not assert, and the evidence does not show, that Plaintiff relied upon the information contained in the report. If anything, the evidence demonstrates, at most, that PRC relied upon the information in the report. Third, Plaintiff cannot establish that Defendant

RCI intended to induce Plaintiff to rely upon the report. The undisputed facts establish that Defendant RCI and its employee intended their audience to be Defendant Baca and the PRC and not Plaintiff.[7]

> B.   Fraudulent Misrepresentation

Like negligent misrepresentation, fraudulent misrepresentation requires proof that Plaintiff actually relied upon the alleged misrepresentation. *Sims v. Craig*, 96 N.M. 33, 35, 617 P.2d 875, 877 (N.M. 1981); *Sailor*, 63 P.3d at 1158 ("[f]raudulent misrepresentation requires reliance").[8] It also requires Plaintiff to show that Defendant RCI acted with the intent to induce Plaintiff to rely upon the misrepresentation. As described above, because Plaintiff cannot demonstrate as a matter of law that he actually relied upon the alleged misrepresentation or that Defendant RCI intended him to rely upon the misrepresentation, the Court grants Defendant RCI's motion for summary judgment in its favor on Plaintiff's fraudulent misrepresentation claim.

> C.   Negligence

Defendant RCI argues that it is entitled to summary judgment in its favor because the undisputed facts do not satisfy the elements of a negligence claim as a matter of law. The elements of a prima facie case of negligence are duty, breach, proximate cause, and damages.

---

[7] Defendant RCI also argues that Plaintiff cannot establish as a matter of law that Defendant RCI and its employees knowingly or recklessly made any misrepresentation to Plaintiff. Because the Court grants Defendant RCI's motion for summary judgment on Plaintiff's negligent misrepresentation claim on the foregoing grounds, the Court does not determine whether Defendant RCI knowingly, recklessly, or negligently made a misrepresentation of fact to Plaintiff or otherwise.

[8] Fraudulent misrepresentation requires a plaintiff to show that the defendant (1) made a misrepresentation of fact intentionally or with reckless disregard for the truth, (2) with the intent to deceive and to induce the injured party to act upon it, (3) and upon which the injured party actually and detrimentally relies. *Sailor*, 63 P.3d at 1157.

*Betsuie v. United States*, 65 F. Supp. 2d 1218 (D.N.M. 1999). Because the Court already has found that Defendant RCI did not, as a matter of law, owe a duty to Plaintiff, the Court grants Defendant RCI's motion for summary judgment on the negligence claim.[9]

II.     Motion to Dismiss Count IV:  Prima Facie Tort

To meet the elements of a prima facie tort, Plaintiff must present evidence of (1) the commission of a lawful act, (2) with the intent to injure Plaintiff, (3) an injury resulting to Plaintiff from the act, and (4) lack of, or insufficient, social or economic justification. *Gioia v. Pinkerton's, Inc.*, 194 F. Supp. 2d 1207, 1222 (D.N.M. 2002); *Beavers v. Johnson Controls World Serv.*, 120 N.M. 232, 239, 901 P.2d 761, 767 (N.M. Ct. App. 1995). If Plaintiff satisfies these elements, the Court must balance the activities complained of with the justification and severity of the injury by weighing (1) the injury, (2) the culpable character of the conduct, (3) the nature and significance of the interests promoted by the actor's conduct, (4) the character of the means used by the actor, and (5) the actor's motive. *Gioia*, 194 F. Supp. 2d at 1222; *see also Beavers*, 120 N.M. at 238, 901 P.2d at 766 (noting that the "balancing approach is necessary because not every intentionally caused harm gives rise to actionable tort").

Defendant RCI maintains that the Court should grant summary judgment in its favor on Plaintiff's prima facie tort claim because the undisputed facts do not indicate that Defendant RCI had an intent to injure the Plaintiff. Defendant RCI also argues, for the first time in its reply, that the Court should grant summary judgment on the prima facie tort claim because Plaintiff cannot allege prima facie tort when the conduct in question fits the contours of another traditional tort,

---

[9] Because the Court dismisses Plaintiff's negligence claim on this ground, the Court need not consider Defendant RCI's motion for summary judgment in its favor for lack of proximate cause.

namely defamation.

In New Mexico "prima facie tort is intended 'to provide a remedy for intentionally committed acts that do not fit within the contours of accepted torts.'" *Schuler v. The McGraw-Hill Cos.*, 989 F. Supp. 1377, 1391 (D.N.M. 1997) (quoting *Schmitz v. Smentowski*, 109 N.M. 386, 396, 785 P.2d 726, 736 (N.M. 1990)). "'Prima facie tort should not be used to evade stringent requirements of other established doctrines of law.'" *Id.* (quoting *Schmitz*, 109 N.M. at 398, 785 P.2d at 738). Plaintiff cannot succeed, as a matter of law on his prima facie tort claim, because the conduct Plaintiff alleges that RCI engaged in fits the contours of the tort of defamation, and the "theory underlying prima facie tort--to provide remedy for intentionally committed acts that do not fit within the contours of accepted torts"--would not be furthered by allowing the claim to go forward. *Schmitz*, 108 N.M. at 396, 785 P.2d at 736; *see also McGraw-Hill*, 989 F. Supp. at 1391 ("Plaintiff's reliance on prima facie tort as a means of recovery is misplaced. The conduct alleged by Plaintiff clearly fits within the contours of several traditional torts. Plaintiff is, then, relying on prima facie tort to evade the requirements of these more traditional torts which is not the proper use of this tort."); *compare Schmitz*, 109 N.M. at 398, 785 P.2d at 738 (allowing plaintiff to proceed on prima facie tort claim because plaintiff could not proceed under alternative, traditional tort theories). Accordingly, because Plaintiff could have proceeded under the tort of defamation, Defendant RCI, as a matter of law, is entitled to summary judgment in its favor on Plaintiff's prima facie tort claim.[10]

---

[10] The Court notes that because it grants Defendant RCI's motion for summary judgment on the prima facie tort claim on this ground, it need not consider Defendant RCI's additional argument that Plaintiff cannot demonstrate intent to harm. In addition, the Court notes that because it has granted Defendant RCI's motions for summary judgment on the fraudulent misrepresentation and prima facie tort claims, Defendant RCI's motion for summary judgment on

## CONCLUSION

For the reasons stated above, **IT THEREFORE IS ORDERED** that:

(1) Defendant RCI's Motion for Partial Summary Judgment on Count III, filed September 28, 2004 [Doc. No. 23], is hereby **GRANTED**;

(2) Defendant RCI's Motion for Partial Summary Judgment on Count IV, Prima Facie Tort, filed September 28, 2004 [Doc. No. 25], is hereby **GRANTED**;

(3) Defendant RCI's Motion for Partial Summary Judgment on Plaintiff's Proximate Cause Claim, filed June 15, 2005 [Doc. No. 93], is hereby **DENIED** as moot; and

(4) Defendant RCI's Motion for Partial Summary Judgment on Punitive Damages Claim, filed September 28, 2004 [Doc. No. 21], is hereby **DENIED** as moot.

Dated this 29th day of March 2006.

JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE

---

Plaintiff's punitive damages claim is moot. The Court therefore denies as moot the Motion for Partial Summary Judgment on Plaintiff's Punitive Damages Claim.